IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-575

Filed 5 March 2024

Stanly County, Nos. 16CRS51915–16

STATE OF NORTH CAROLINA

v.

JACK LABRITTAN SMITH, Defendant.

Appeal by defendant from judgment entered 26 July 2022 by Judge Julia Gullett in Stanly County Superior Court. Heard in the Court of Appeals 6 February 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Isham Faison Hicks, for the State.*

*Mark Montgomery, for defendant-appellant.*

FLOOD, Judge.

Jack Labrittan Smith ("Defendant") appeals from the 26 July 2022 judgment in which the trial court concluded Defendant had forfeited his right to counsel. Our review of the Record reveals the trial court correctly concluded Defendant, by his own actions, forfeited his right to counsel; therefore, we conclude the trial court did not err.

**I. Factual and Procedural Background**

On 13 December 2017, following events that occurred in May 2016 between Defendant and a woman with whom he had a relationship ("Mary"), Defendant entered a plea of guilty of first degree kidnapping, second degree rape, and second degree burglary. Defendant was then sentenced to 86 to 116 months' imprisonment. Several years later on 6 July 2020, due to a sentencing issue on the December 2017 judgment regarding "the maximum sentence not corresponding to the minimum," Defendant was brought back before the trial court and was represented by attorney Patrick Currie ("Attorney Currie"). At this hearing, the trial court corrected Defendant's sentence, Defendant asked for his guilty plea to be set aside, and Attorney Currie motioned to withdraw as counsel. The trial court granted Defendant's request to set his guilty plea aside, granted Attorney Currie's request to withdraw, and appointed a new attorney, Andrew Scales ("Attorney Scales") to represent Defendant.

On 10 November 2020, Defendant and Attorney Scales appeared before the trial court to address Defendant's contention that Attorney Scales did not "have [Defendant's] best interest in mind." Defendant requested that he be represented by an attorney who was not a member of the Stanly County Bar. Attorney Scales made a motion to withdraw as counsel due to Defendant making "it clear that he no longer trusted [Attorney Scales] to represent him." The trial court granted Attorney Scales's motion to withdraw and indicated that Defendant would have "another attorney

appointed outside of [Stanly] county . . . ." Attorney Butch Jenkins ("Attorney Jenkins") of the Montgomery County Bar was then appointed to represent Defendant.

On 17 March 2021, Defendant and Attorney Jenkins appeared before the trial court for a hearing on Attorney Jenkins's motion to withdraw as counsel. During the hearing, Attorney Jenkins explained to the trial court that Defendant indicated he would like to proceed with his case under a theory that Defendant's former court-appointed counsel had engaged in misconduct. Attorney Jenkins stated that he felt "strongly that [Defendant] ha[d] a right to pursue his defenses" but that Attorney Jenkins had relationships with both Attorney Currie and Attorney Scales and therefore "could not be effective as [Defendant's] counsel . . . ." When asked whether he objected to Attorney Jenkins's motion, Defendant stated he did not and asked that his next court-appointed counsel not be appointed "by you," referring to the presiding judge. Defendant explained he could not trust the trial judge because Defendant had told the trial judge that Attorney Currie "destroyed [his] client file" and nothing was done. After a combative back and forth, the trial judge stated he would "recuse [himself] from any other matters" concerning Defendant.

On 13 April 2021, attorney Richard Roose ("Attorney Roose") was appointed to Defendant's case. Defendant's arraignment hearing was scheduled for 12 July 2021, at which Defendant made a motion for new counsel, alleging Attorney Roose committed legal malpractice. When asked to speak on Defendant's motion for new counsel, Attorney Roose stated:

> There are issues, and I think that I see the same issues that caused [Attorney] Jenkins to withdraw, appear to be arising in this case in that, you know, I have a – a plan on how to proceed with this case, but it's not enough for [Defendant]. He wants me to do other things that I can't do involving the previous attorneys here. And I see that coming. I don't see us resolving that matter.

After hearing from both Attorney Roose and Defendant, the trial court concluded that Attorney Roose would remain as counsel for Defendant, to which Defendant, referring to Attorney Roose, responded, "[l]ook at his face, Your Honor. He is – I will represent myself before he is my attorney."

On 14 October 2021, Attorney Roose made a motion to withdraw as counsel for Defendant. In his presentation to the trial court, Attorney Roose stated that, pursuant to Rule 1.16 of the Rules of Professional Conduct, "a lawyer shall not represent a client who insists upon taking action that the lawyer considers repugnant, imprudent, or contrary to the advice and judgment of the lawyer[,] [a]nd that is exactly the situation that we have here."

In responding to Attorney Roose's motion, Defendant reiterated previous complaints about legal malpractice, ineffective assistance of counsel, and ethical code violations. Ultimately, the trial court granted Attorney Roose's motion to withdraw and appointed Indigent Defense Services to represent Defendant.

Attorney Charles B. Brooks ("Attorney Brooks") was appointed to represent Defendant, but after just three months of working with Defendant, Attorney Brooks filed a motion to withdraw as counsel, citing a "breakdown in communications" such

that representation would not be possible.  The motion to withdraw was heard on 18 January 2022, during which the assistant district attorney argued that Defendant's "efforts to continually change lawyers is, at minimum, an effort to obstruct and delay the trial."  When the trial judge questioned Defendant about Attorney Brooks's motion, Defendant repeatedly interrupted the trial court and asserted that his previous attorneys "flagrantly violated the rules of criminal procedure" and that he sought to hold Attorney Brooks "accountable."  Several times throughout the hearing, the trial judge asked Defendant not to interrupt and warned Defendant that his inability to work with his appointed counsel could result in forfeiture of the right to an attorney.  Eventually, the presiding judge, Attorney Brooks, and Defendant had an *in camera* conference in the judge's chambers, after which the trial court allowed Attorney Brooks to withdraw as counsel and appointed attorney Randolph Lee ("Attorney Lee") to represent Defendant.  After the trial court announced the appointment of Attorney Lee, Defendant objected to the appointment and made a motion for the trial judge to recuse himself.  The objection was overruled, and the motion was denied.

On 9 May 2022, Defendant appeared *pro se* with Attorney Lee as standby counsel.  During the hearing, Defendant became combative and asserted that all of his motions were "going to be denied, but, yeah, let's – let's – let's play."  The trial court warned Defendant he could be held in contempt for his behavior to which Defendant replied, "I've been locked up 2100 days.  Been brought back from prison.

Contempt me, Your Honor, if that's what you want to do." Defendant continued, "I ain't scared of nothing. . . . I trust God and that's it. Okay. Don't ever call yourself honorable. There's only one righteous judge." The trial court then held Defendant in contempt and sentenced him to ninety days' imprisonment.

After being held in contempt, the hearing continued, during which Defendant stated, "I've been focusing on God these last five weeks, so I haven't really done much work on this case." When the trial court urged Defendant to present his arguments, Defendant mocked the trial court and questioned its ability to be honest and impartial, which prompted the trial court to warn Defendant he could be held in contempt for another ninety days.

Finally, on 19 July 2022, Defendant's case came on for trial, during which Defendant proceeded *pro se* with Attorney Lee as standby counsel. At the outset of the trial, Defendant confirmed he wished to proceed *pro se*. Defendant then made a motion for the trial judge to recuse herself for prejudice, which the trial court denied. The trial court again asked Defendant if he would like an appointed lawyer, to which Defendant replied "yes[,]" and Attorney Lee was reappointed as full counsel.

On the final day of trial, after the State rested its case, Defendant stated that Attorney Lee's cross examination of Mary put Defendant in "quite a predicament." Defendant told the trial court that he wanted to introduce allegedly exculpatory text messages sent by Mary into evidence and have Attorney Lee question Mary about the texts. During the questioning of Mary, Attorney Lee paused in between each question

to confer with Defendant. Eventually, Attorney Lee asked the trial court for an *ex parte* conference, during which Attorney Lee motioned to withdraw as counsel because Defendant was of the opinion that [Attorney Lee] had thrown him "under the bus[,]" and there was now an "irreconcilable conflict" between them. After Attorney Lee made his motion, the trial court excused the prosecutors and police officers from the courtroom. Defendant then addressed the trial court and stated that, in his opinion, Attorney Lee was "helping" Mary by "doctoring up" what she said in the texts and asking her easy questions. Defendant went on to accuse Attorney Lee of lying under oath. The trial court then emphasized that six different attorneys had been appointed to represent Defendant, before asking him whether he wanted to release Attorney Lee from the case. Defendant refused to answer the question directly, instead saying, "I want him to ask [Mary] the questions that I would like to ask that are not . . . against the ethical rules."

From the bench, the trial court began making findings of fact, while Defendant continuously interrupted, causing the trial court to threaten to remove him from the courtroom. The trial court's findings of fact summarized the history of Defendant's case, the tenuous relationship between Defendant and his appointed counselors, and Defendant's insistence on pursuing legal strategies that were improper. After making the factual findings, the trial court ruled that "[Defendant] by his own actions has . . . forfeited his right to a court-appointed lawyer and that the relationship

- 7 -

between he and [Attorney] Lee has gotten so bad that [Attorney] Lee finds that he cannot continue." Defendant appealed.

## II. **Jurisdiction**

This case is properly before this Court as an appeal from a final judgment pursuant to N.C. Gen. Stat. § 7A-27(b) (2023).

## III. **Analysis**

On appeal, Defendant argues the trial court erred in finding that he forfeited his constitutional right to counsel. We disagree.

"The right to counsel in a criminal proceeding is protected by both the federal and state constitutions," and therefore, "[o]ur review is *de novo* . . . ." *State v. Simpkins*, 373 N.C. 530, 533, 838 S.E.2d 439, 444 (2020). "A finding that a defendant has forfeited the right to counsel requires egregious[,] dilatory[,] or abusive conduct on the part of the defendant which undermines the purposes of the right to counsel . . . ." *Id.* at 541, 838 S.E.2d at 449. Egregious conduct

> may take the form of "a criminal defendant's display of aggressive, profane, or threatening behavior," but . . . can also result where a defendant remains polite and apparently cooperative if the defendant's "obstreperous actions" are so severe as to . . . completely prevent a trial court from proceeding in the case.

*State v. Atwell*, 383 N.C. 437, 449, 881 S.E.2d 124, 132 (2022) (citations omitted). "Examples of such obstreperous actions include, *inter alia*, a defendant's 'refus[al] to obtain counsel after multiple opportunities to do so . . . or [the] continual hir[ing] and

fir[ing of] counsel and significantly delay[ing] the proceedings.'" *Id.* at 449, 881 S.E.2d at 132 (quoting *State v. Harvin*, 382 N.C. 566, 587, 879 S.E.2d 147, 161 (2022)) (alterations in original). "[E]ven if a '[defendant]'s conduct [is] highly frustrating,'" however, "forfeiture is not constitutional where any difficulties or delays are 'not so egregious that [they] frustrated the purposes of the right to counsel itself.'" *Id.* at 449, 881 S.E.2d at 132 (quoting *Simpkins*, 373 N.C. at 539, 838 S.E.2d at 448).

While Defendant concedes his conduct may have "been irritating to the learned attorneys and judges," he argues his conduct fell far short of conduct in cases where this Court has previously concluded a defendant had lost their right to counsel. *See State v. Montgomery*, 138 N.C. App. 521, 523, 530 S.E.2d 66, 68 (2000) (where the defendant threw water in his attorney's face and was subsequently held in contempt of court); *see also State v. Joiner*, 237 N.C. App. 513, 515–16, 767 S.E.2d 557, 559 (2014) (where the defendant refused to answer the trial court's questions, threatened to punch the judge in the face, and smeared feces on the walls of his holding cell); *see also State v. Brown*, 239 N.C. App. 510, 519, 768 S.E.2d 896, 901 (2015) (where the defendant "repeatedly and vigorously objected to the trial court's authority to proceed," thus willfully obstructing and delaying the trial proceedings).

Here, while Defendant never physically assaulted an officer of the court, our *de novo* review of the Record reveals Defendant's inability to work with court-appointed counsel and insistence that the trial court could not be impartial amount to obstreperous conduct. *See Atwell,* 383 N.C. at 449, 881 S.E.2d at 132. Similar to

the defendant's conduct in *Montgomery*, Defendant's conduct in the courtroom was egregious enough to warrant his being held in contempt for ninety days. *See Montgomery*, 138 N.C. App. at 523, 530 S.E.2d at 68.

Additionally, Defendant's insistence that his attorneys pursue defenses that were barred by ethical rules and his refusal to cooperate when they would not comply with his requests resulted in the withdrawal of six different attorneys. Further, our review of the trial transcripts shows that Defendant was combative and interruptive during the majority of his appearances in court, sometimes going so far that the trial judge threatened removal. Finally, Defendant's conduct delayed his case from being tried for two years, causing a significant delay of the proceedings. *See Atwell*, 383 N.C. at 449, 881 S.E.2d at 132.

As our Supreme Court concluded in *Simpkins* and *Atwell*, a defendant forfeits their right to counsel if their conduct is so egregious, dilatory, or abusive that it prevents the trial court from proceeding in a case. *See Simpkins*, 373 N.C. at 541, 838 S.E.2d at 449; *see also Atwell* 383 N.C. at 449, 881 S.E.2d at 132. Given Defendant was held in contempt and caused six different attorneys to withdraw, resulting in a two-year delay in the proceedings, we conclude the trial court was correct in finding Defendant, by his own actions, forfeited his right to counsel.

## IV. <u>Conclusion</u>

Defendant's egregious and dilatory conduct undermined the purpose of the right to counsel; therefore, the trial court did not err when finding Defendant had forfeited that right.

NO ERROR.

Chief Judge DILLON and Judge ZACHARY concur.